FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2021 NOV 10  PM 5: 18

DISTRICT COURT
DLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.

KEITH INGERSOLL
JAMES P. ADAMCZYK

CASE NO. 6:21-cr-*138- ORL- ACC-EJK*
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 1028A

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

### A. Introduction

At times relevant to this Indictment:

1.     KI Consulting Group LLC (KI Consulting Group) and the Ingersoll Group, LLC (Ingersoll Group) were limited liability companies that were registered by KEITH INGERSOLL with the Florida Department of State in 2017 and 2018, respectively.  KEITH INGERSOLL controlled both of those companies and their bank accounts.

2.     Daystar Investments, Inc. (Daystar Investments), IDrive Media Group Inc. (IDrive Media), and Shooters of Orlando Inc., also referred to as Shooters Orlando Inc., (Shooters Orlando) were corporations that were registered by JAMES P. ADAMCZYK with the Florida Department of State in 2018, 2020, and 2016,

respectively.  JAMES P. ADAMCZYK controlled each of those corporations and their bank accounts.

3.    The Victim is a resident of the Middle District of Florida.  The Victim controlled several companies, including Company A, Company B, Company C, and Company D, and their bank accounts.

4.    Bank of America, BMO Harris Bank, Fifth Third Bank, Regions Bank, Seacoast National Bank (Seacoast Bank), and Wells Fargo Bank were financial institutions as defined by 18 U.S.C. § 20, the accounts and deposits of which were federally insured by the Federal Deposit Insurance Corporation.

### B.  Conspiracy

5.    Beginning at a time unknown to the Grand Jury, but beginning at least by in or about April 2016, and continuing thereafter through and including on or about the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

**KEITH INGERSOLL**
**JAMES P. ADAMCZYK,**

did knowingly and willfully combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury to commit wire fraud, by knowingly and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property, by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the aforesaid scheme and artifice to defraud, knowingly transmitting and

2

causing to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

6.    The manner and means of the conspiracy included the following:

a.    It was part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did unlawfully devise and execute a scheme and artifice to defraud the Victim of money and property by means of materially false and fraudulent pretenses, representations and promises.

b.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent to the Victim that KEITH INGERSOLL or entities controlled by or affiliated with him had entered into contracts to purchase real estate within and outside of Florida, including in Daytona Beach in Volusia County, Ocala in Marion County, Fort Lauderdale in Broward County, Alabama, Illinois, Nebraska, and the Bahamas.

c.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent to the Victim that funds were needed from the Victim to be used as refundable deposits for real estate that had been contracted for purchase.

d.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and

3

fraudulently represent that the funds provided by the Victim to be used as refundable deposits would be held in escrow by an attorney.

e.      It was a further part of the conspiracy that another co-conspirator known to the Grand Jury (referred to herein as the "Suspended Attorney") would and did falsely and fraudulently represent that he was an attorney who would hold the refundable deposits in escrow, when in truth and in fact, the Suspended Attorney was not a licensed attorney, he had been suspended from the practice of law in 2008 and had never been reinstated, and he did not retain the Victim's funds in escrow but used a portion for his own personal benefit and transferred other funds to KEITH INGERSOLL and JAMES P. ADAMCZYK.

f.      It was a further part of the conspiracy that, after the Suspended Attorney died, JAMES P. ADAMCZYK would and did falsely and fraudulently represent that he was an attorney who would hold the refundable deposits in escrow or as an escrow agent, when in truth and in fact, JAMES P. ADAMCZYK was not a licensed attorney and he did not hold the Victim's funds in escrow or as an escrow agent but diverted portions for his own personal benefit and transferred other funds to KEITH INGERSOLL.

g.      It was a further part of the conspiracy that KEITH INGERSOLL would and did falsely and fraudulently represent that he would locate a buyer for each property under contract and then either assign the purchase contract to the buyer for a specified price or simultaneously purchase and sell (flip) the property.

4

h.      It was a further part of the conspiracy that KEITH INGERSOLL would and did falsely and fraudulently represent that the Victim would receive 9% interest for the refundable deposits that were held in escrow or that were held by an escrow agent, as well as a share of the profits from the sale of any of the real estate that was sold.

i.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that amounts held as refundable deposits would be refunded to the Victim at the Victim's request.

j.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently claim that KEITH INGERSOLL or entities controlled by or affiliated with him had entered into purchase contracts with the owners of real estate, when in truth and in fact, as the defendants then and there well knew, the owners had not agreed to sell the real estate and, in some instances, had never been contacted about selling the real estate.

k.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did fabricate the names of the entities who the defendants and their conspirators falsely claimed were the owners of the properties that had been contracted for sale.

l.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did provide the

Victim with real estate purchase contracts and other documents that were not executed by the owners of the properties but that contained forged signatures or were executed using the names of fictitious individuals and that falsely represented the entities that owned the properties.

      m.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that the owners of the real estate claimed to be under contract had agreed to extensions of the closing dates for the contracts.

      n.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did falsely and fraudulently represent that there were buyers interested in purchasing the real estate that the conspirators claimed was under contract.

      o.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did identify such potential buyers by name and claim that they had expressed interest in purchasing the real estate, when in truth and in fact, as the defendants then and there well knew, the potential buyers did not exist, had never been contacted about purchasing the real estate, or had declined to pursue a transaction.

      p.    It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did fabricate some of the names of potential buyers who the conspirators falsely claimed were interested in purchasing the real estate that the conspirators claimed to have under contract.

q.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators, as opposed to holding the Victim's refundable deposits in escrow as had been promised to the Victim, would and did spend the proceeds received as a result of their fraud on themselves and for their own personal benefit, including for luxury car rentals, travel, and adult entertainment.

r.      It was a further part of the conspiracy that KEITH INGERSOLL and JAMES P. ADAMCZYK would and did provide the Victim with documents that falsely claimed that the Victim's refundable deposits were being held in escrow or by an escrow agent, when in truth and in fact, as the defendants then and there well knew, the Victim's refundable deposits were not being held in escrow or by an escrow agent but had been transferred to accounts controlled by KEITH INGERSOLL and JAMES P. ADAMCZYK and used to benefit themselves.

s.      It was a further part of the conspiracy that, after the Victim requested a return of some of his refundable deposits, KEITH INGERSOLL and JAMES P. ADAMCZYK would and did provided false excuses why the funds could not be returned, including false claims that JAMES P. ADAMCZYK was not allowed to leave Costa Rica due to having COVID-19 and that JAMES P. ADAMCZYK needed to be at the bank in person to return the funds to the Victim.

t.      It was a further part of the conspiracy that KEITH INGERSOLL would and did falsely and fraudulently represent that a company was willing to replace the Victim as the one to make the refundable deposits and that he had been in contact with "Ray Beckwith" and "Ray Beckworth" of that company who was interested in

7

pursuing such a transaction, when in truth and in fact, as KEITH INGERSOLL then and there well knew, the company did not have any representative by the name of "Ray Beckwith" and "Ray Beckworth" and KEITH INGERSOLL had fabricated those names and created an email account using the fictitious name of "Ray Beckworth" to perpetrate the scheme by sending an email using that fictitious identity.

u.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did obtain over $12 million as a result of executing this conspiracy and scheme and artifice to defraud.

v.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did use interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by causing interstate wires to be used to send and receive emails to and from each other and the Victim, and by causing interstate wires to be used to send and receive proceeds.

w.      It was a further part of the conspiracy that KEITH INGERSOLL, JAMES P. ADAMCZYK, and other co-conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

8

## COUNTS TWO THROUGH TWENTY-ONE
### (Wire Fraud)

### A.  Introduction

1.     The allegations contained in paragraphs one through four of Count One of this Indictment are hereby realleged and incorporated herein by reference.

### B.  Scheme and Artifice

2.     Beginning at a time unknown to the Grand Jury, but beginning at least by in or about April 2016, and continuing thereafter through and including on or about the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendants,

**KEITH INGERSOLL**
**JAMES P. ADAMCZYK,**

did knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C.  Manner and Means of the Scheme

3.     The manner and means utilized to accomplish the scheme and artifice to defraud are set forth in paragraph six of Count One of this Indictment, which are incorporated by reference herein.

### D.  Interstate Wires

4.     On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendants,

**KEITH INGERSOLL**
**JAMES P. ADAMCZYK,**

for the purpose of executing the aforesaid scheme and artifice to defraud and for

obtaining money and property by means of materially false and fraudulent pretenses,

representations and promises, did knowingly, and with intent to defraud, transmit and

cause to be transmitted by means of wire, radio, and television communication in

interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| TWO | October 11, 2017 | An email from KEITH INGERSOLL to the Victim, with a copy to the Suspended Attorney, attaching a contract for a purported real estate transaction in Nebraska |
| THREE | March 23, 2018 | A wire transfer of $500,000 from Company B's account at Bank of America to the Suspended Attorney's account at Regions Bank |
| FOUR | August 30, 2018 | A wire transfer of $1.5 million from Company A's account at Bank of America to the Suspended Attorney's account at Regions Bank |
| FIVE | February 11, 2019 | A wire transfer of $1 million from Company A's account at Bank of America to the Suspended Attorney's account at Regions Bank |
| SIX | June 5, 2019 | A wire transfer of $1 million from Company C's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| SEVEN | August 28, 2019 | A wire transfer of $1.25 million from Company D's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| EIGHT | November 20, 2019 | A wire transfer of $875,000 from Company A's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| NINE | January 10, 2020 | An email from KEITH INGERSOLL to the Victim, forwarding a copy of an executed global extension from JAMES P. ADAMCZYK |

10

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| **TEN** | February 3, 2020 | A wire transfer of $1.25 million from Company A's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| **ELEVEN** | March 19, 2020 | An email from KEITH INGERSOLL to the Victim, with a copy to another email account for KEITH INGERSOLL, forwarding an email from JAMES P. ADAMCZYK regarding a purported real estate transaction in Broward County, Florida |
| **TWELVE** | May 21, 2020 | A wire transfer of $925,000 from Company A's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| **THIRTEEN** | August 26, 2020 | A wire transfer of $250,000 from Company A's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| **FOURTEEN** | October 21, 2020 | An email from KEITH INGERSOLL to the Victim and another email account of KEITH INGERSOLL, forwarding an email from "Ray Beckwith" |
| **FIFTEEN** | October 29, 2020 | A wire transfer of $1.5 million from Company A's account at Bank of America to JAMES P. ADAMCZYK's account at Fifth Third Bank |
| **SIXTEEN** | January 9, 2021 | An email from the Victim to JAMES P. ADAMCZYK, with a copy to KEITH INGERSOLL, regarding receipt of the executed global extension |
| **SEVENTEEN** | April 20, 2021 | An email from KEITH INGERSOLL to the Victim entitled, "Daytona analysis" |
| **EIGHTEEN** | April 21, 2021 | An email from KEITH INGERSOLL to the Victim, entitled, "Fwd: Property marke up," with attachment, with a copy to another email account for KEITH INGERSOLL |
| **NINETEEN** | April 21, 2021 | An email from the Victim to JAMES P. ADAMCZYK, with a copy to KEITH INGERSOLL and another person, with attachment, regarding authorization of a $800,000 wire transfer as a refundable deposit on a purported real estate transaction in Volusia County, Florida |

| Count | Date | Interstate Wire |
|-------|------|-----------------|
| **TWENTY** | May 20, 2021 | An email from KEITH INGERSOLL to the Victim, with a copy to another email account for KEITH INGERSOLL, attaching a purchase extension for a purported real estate transaction in Volusia County, Florida |
| **TWENTY-ONE** | July 2, 2021 | An email from KEITH INGERSOLL to "Ray Beckworth," entitled, "RE: Conversation for refi at 11:30," with a copy to the Victim and another email account of KEITH INGERSOLL |

All in violation of 18 U.S.C. § 1343.

## COUNTS TWENTY-TWO THROUGH FORTY
### (Illegal Monetary Transactions)

1.     The Grand Jury hereby realleges paragraphs one through four of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.     On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendants,

**KEITH INGERSOLL**
**JAMES P. ADAMCZYK,**

did knowingly engage and attempt to engage in the monetary transactions described below in and affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property was, in fact, derived from a specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, knowing that such transaction involved property and funds that were the proceeds obtained from a criminal offense, as follows:

12

| Count | Date | Transaction |
|---|---|---|
| TWENTY-TWO | October 11, 2017 | $389,300 wire transfer by and through the Suspended Attorney's account at Bank of America to an account belonging to KI Consulting Group at Seacoast Bank |
| TWENTY-THREE | November 30, 2017 | $100,000 wire transfer by and through the Suspended Attorney's account at Bank of America to an account belonging to Shooters Orlando at Seacoast Bank |
| TWENTY-FOUR | January 16, 2018 | $1,164,000 wire transfer by and through the Suspended Attorney's Bank of America account to an account for Shooters Orlando at Seacoast Bank |
| TWENTY-FIVE | March 23, 2018 | $440,000 wire transfer by and through the Suspended Attorney's Regions Bank account to an account for Daystar Investments at Seacoast Bank |
| TWENTY-SIX | August 30, 2018 | $550,000 wire transfer by and through JAMES P. ADAMCZYK's Fifth Third Bank account to an account for KI Consulting Group at Seacoast Bank |
| TWENTY-SEVEN | August 30, 2018 | $800,000 wire transfer by and through the Suspended Attorney's account at Region's Bank to an account for Daystar Investments at Seacoast Bank |
| TWENTY-EIGHT | August 30, 2018 | $600,000 wire transfer by and through the Suspended Attorney's account at Regions Bank to an account belonging to Shooters Orlando at Fifth Third Bank |
| TWENTY-NINE | August 30, 2018 | $760,000 transfer by and through Daystar Investments' account at Seacoast Bank to an account belonging to KI Consulting at Seacoast Bank |
| THIRTY | February 12, 2019 | $925,000 wire transfer by and through the Suspended Attorney's account at Regions Bank to an account belonging to Daystar Investments at Fifth Third Bank |

| Count | Date | Transaction |
|---|---|---|
| THIRTY-ONE | February 12, 2019 | $350,000 cashier's check made payable to KEITH INGERSOLL for "Midwest Land Trust Ingersoll" that was obtained with funds from Daystar Investments' account at Fifth Third Bank, which cashier's check was deposited into an account of KEITH INGERSOLL at Wells Fargo Bank |
| THIRTY-TWO | February 14, 2019 | $308,000 by and through Daystar Investments' account at Fifth Third Bank to an account belonging to KEITH INGERSOLL at Wells Fargo Bank |
| THIRTY-THREE | June 5, 2019 | $389,700 wire transfer by and through Fifth Third account of Daystar Investments to an account belonging to Ingersoll Group at Seacoast Bank |
| THIRTY-FOUR | August 28, 2019 | $750,000 transfer by and through the Fifth Third Bank account for JAMES P. ADAMCZYK to an account belonging to the Ingersoll Group at Wells Fargo |
| THIRTY-FIVE | November 21, 2019 | $150,000 wire transfer by and through the Fifth Third Bank account for JAMES P. ADAMCZYK to an account belonging to Ingersoll Group at Seacoast Bank |
| THIRTY-SIX | February 3, 2020 | $325,000 cashier's check made payable to the Ingersoll Group for "Ingersoll Land Trust 1463 Orlando" that was obtained with funds from the Fifth Third Bank account of JAMES P. ADAMCZYK, which cashier's check was deposited into an account of Ingersoll Group at Wells Fargo Bank |
| THIRTY-SEVEN | May 21, 2020 | $420,000 wire transfer by and through the Fifth Third Bank account of JAMES P. ADAMCZYK to an account belonging to the Ingersoll Group at Wells Fargo Bank |
| THIRTY-EIGHT | August 27, 2020 | $150,000 wire transfer by and through the Fifth Third Bank account for JAMES P. ADAMCZYK to an account belonging to the Ingersoll Group at Wells Fargo Bank |

| Count | Date | Transaction |
|---|---|---|
| THIRTY-NINE | October 30, 2020 | $352,000 wire transfer by and through Fifth Third Bank account for JAMES P. ADAMCZYK to an account belonging to the Ingersoll Group at Wells Fargo Bank |
| FORTY | November 1, 2020 | $400,000 check made payable to the Ingersoll Group, LLC for "Land Trust 1204" that was obtained with funds from the Fifth Third Bank of IDrive Media, which check was deposited into an account of the Ingersoll Group at Wells Fargo Bank |

In violation of 18 U.S.C. §§ 1957 and 2.

## COUNT FORTY-ONE
### (Aggravated Identity Theft)

### A. Introduction

1.       The Grand Jury hereby realleges paragraphs one through four of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

2.       On or about August 1, 2017, in the Middle District of Florida, and elsewhere, the defendant,

**KEITH INGERSOLL,**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the name and signature of W.V., during and in relation to a felony violation of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, as charged in Count One of the Indictment, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. §§ 1028A(a)(1) and 2.

15

## FORFEITURE

1.      The allegations contained in Counts One through Forty are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982, and 28 U.S.C. § 2461(c).

2.      Upon conviction of a violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3.      Upon conviction of a violation of 18 U.S.C. § 1957, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.      If any of the property described above, as a result of any act or omission of the defendant:

     a.      cannot be located upon the exercise of due diligence;

     b.      has been transferred or sold to, or deposited with, a third party;

     c.      has been placed beyond the jurisdiction of the Court;

     d.      has been substantially diminished in value; or

     e.      has been commingled with other property which cannot be divided without difficulty;

16

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL,

_____
Foreperson   Deputy

KARIN HOPPMANN
Acting United States Attorney

By: _____
Jennifer Harrington
Assistant United States Attorney

By: _____
Amanda Daniels
Assistant United States Attorney

By: _____
Roger B. Handberg
*Assistant United States Attorney*
Chief, Orlando Division

By: _____
Josephine W. Thomas
Assistant United States Attorney
Chief, Criminal Division

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Orlando Division

### THE UNITED STATES OF AMERICA

vs.

### KEITH INGERSOLL
### JAMES P. ADAMCZYK

### INDICTMENT

Violations:

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1957
18 U.S.C. § 1028A

A true bill,

_____
Foreperson    Deputy

Filed in open court this 10th day of November, 2021.

_____
Clerk

Bail   $_____